UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

DRUMMOND COMPANY, INC.,

    Plaintiff,

v.

TERENCE P. COLLINGSWORTH, et al.,

    Defendants.

_____/

### NON-PARTY, JACK SCAROLA AND SEARCY DENNEY SCAROLA BARNHART & SHIPLEY, P.A.'S MOTION TO QUASH SUBPOENAS DUCES TECUM FOR PROTECTIVE ORDER AND FOR SANCTIONS

Non-Parties, Jack Scarola ("Scarola") and Searcy Denney Scarola Barnhart & Shipley, P.A. ("Searcy Denney"), pursuant to Federal Rules of Civil Procedure 26 and 45, respectfully request the Court to quash the subpoena duces tecum related to an action pending in the Northern District of Alabama, issued by Plaintiff, Drummond Company, Inc. ("Drummond"), as well as enter a protective order and award sanctions, and in support thereof states:

**Background – The Chiquita Litigation**

Scarola is a shareholder with Searcy Denney, a law firm based in Palm Beach County, which primarily represents injured plaintiffs. Scarola and Searcy Denney, along with several other lawyers and law firms across the county, commenced more than a dozen separate complaints in various district courts against Chiquita Brands International, Inc. and its subsidiaries and affiliates (collectively "Chiquita"). All of the cases were transferred to the Southern District of Florida by the Judicial Panel on Multidistrict Litigation (MDL #1916) and are currently ongoing. Issues related to plaintiffs' claims under 28 U.S.C. § 1350, commonly known as the Alien Torture Statute or Alien Tort Claims Act, are pending in the United States

District Court for the Eleventh Circuit. Meanwhile, plaintiffs have substantive claims based on diversity jurisdiction that are currently pending before United States District Court Judge Kenneth Marra.

The lawsuits allege the torture and killing of thousands of Colombian citizens and foreign nationals, by the Autodefensas Unidas de Colombia, a paramilitary organization operating in Colombia, and left-wing guerrilla insurgents, such as the Revolutionary Armed Forces of Colombia. Plaintiffs in the various lawsuits are representatives of the victims, who allege that Chiquita provided funding to the military groups in order to maintain their profitable control of Colombia's banana growing regions (the "Chiquita Litigation").

During the pendency of the vast Chiquita litigation, the various plaintiffs' attorneys and law firms across the country, representing a massive number of plaintiffs, attempted to work together and entered into a "common interest and confidentiality agreement" and a "confidentiality agreement." In accordance with the agreements, the common work undertaken by counsel in the Chiquita Litigation, which would include opinions and actions in furtherance of same as to issues which arise, is to remain confidential and not subject to disclosure.[1] Scarola and Searcy Denney are liaison counsel for the group and have actively participated in same, which also includes attorney Terrence P. Collingsworth and the firm in which he is a partner, Conrad & Scherer, LLP.

### The Drummond Litigation

Currently pending in Northern District of Alabama is a case captioned *Drummond Company, Inc. v. Terrence P Collingsworth et. al.*, Case No. 2:11-CV-3695-RDP-TMP (the

---

[1] Scarola and Searcy Denney have not attached the agreements to this Motion as doing so would arguably violate the agreements. To the extent the Court deems it necessary to review the agreements and directs Scarola and Searcy Denney to provide the Court with same, they will do so for in camera review.

"Alabama Litigation"). A copy of the First Amended Complaint is attached hereto as Exhibit A. In the Alabama Litigation, Drummond has sued Terrence P. Collingsworth and Conrad & Scherer LLP for defamation. Among the allegations in that proceeding, Drummond asserts that Collingsworth and Conrad & Sherer filed three lawsuits against Drummond, which resulted in defamatory statements to be published, such as Drummond had connections with paramilitary groups in Columbia.

### Improper Subpoenas – Work Product, Unduly Burdensome & Significant Expense

On September 5, 2014, Scarola and Searcy Denney were each served with a subpoena duces tecum, copies of which are attached hereto as Exhibits B and C, issued by Drummond in connection with the Alabama Litigation. The subpoenas require Scarola and Searcy Denney to produce in Miami on September 26, 2014, the same categories of documents – all of which are related to legal services provided by Scarola and Searcy Denney in ongoing the Chiquita Litigation and discussions among members of the plaintiffs' counsel group. At a minimum, the subpoenas are improper as compliance would require Scarola and Searcy Denney to violate the "common interest and confidentiality agreement."

More problematic is that compliance would require disclosure of attorney work-product - documents related to the discussions by and among plaintiffs' counsel prosecuting the Chiquita Litigation. For example, 8 of the 10 categories of documents set forth in the subpoenas seek documents/emails by and among counsel, related to, as the subpeonas describe it -- discussions as to providing security in Colombia or payments to witnesses or Columbian paramilitary. These are two of the many issues which arose during the Chiquita Litigation that were the subject of

discussions, including legal ramifications of same, by the plaintiffs' counsel group who were subject to the "common interest and confidentiality agreement."[2]

As a result, Scarola and Searcy Denney seek an order quashing the subpoenas and also the entry of a protective order on the grounds the documents sought are privileged attorney work product and would also require Scarola and Searcy Denney to violate the "common interest and confidentiality agreement." In addition, the same relief is sought as the categories of documents sought are overbroad and not easily obtainable, imposing a significant burden in time and expense on non-parties Scarola and Searcy Denney to comply. Under the Federal Rules, Scarola and Searcy Denney are also entitled to fees and costs as sanctions in connection with this proceeding.

**Privileged Work Product as to the Chiquita Litigation Requires Quashing of Subpoenas**

Non-parties, such as Scarola and Searcy Denney, can move to quash a subpoena pursuant to Federal Rule of Civil Procedure 45(d) and can also move for a protective order pursuant to Federal Rule of Civil Procedure 26(c). *See Redfish Key Villas Condo. Ass'n v. Amerisure Ins. Co.*, Case No. 2:13-CV-241-FtM-29CM, 2014 WL 407960 (M.D. Fla. Feb. 3, 2014). Pursuant to Rule 45(d)(3)(A), the "court for the district where compliance is required[3] must 'quash' or modify a subpoena that: (i) fails to allow a reasonable amount of time to comply; … (iii) requires the disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." All three of these elements are involved in this instance. Further, under Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Both the undue burden and

---

[2] Since Scarola and Searcy Denney are responding to subpoenas via this Motion, statements made by them herein as to the plaintiffs' counsel group and attorney work-product privilege is subject to Rule 11. To the extent the Court deems it necessary for Scarola and Searcy Denney to provide an affidavit setting forth the same statements, it will promptly do so.

[3] In this instance, the subpoenas were issued from the Northern District of Alabama, but require compliance in the Southern District of Florida.

4

expense elements are involved here. "Rule 26(c) gives the district court discretionary power to fashion a protective order. The decision does not depend upon a legal privilege." *Farnsworth v. Procter & Gamble, Co.*, 758 F. 2d 1545, 1548 (11th Cir. 1985).

Quashing the subpoenas in this instance is required as compliance with same would force the disclosure of privileged matters, in particular, attorney work-product related to the ongoing Chiquita Litigation. The attorney work-product privilege traces its roots to the recognition by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947), that "it is essential that a lawyer work with certain degrees of privacy, free from unnecessary intrusion by opposing parties and their counsel." The privilege is presently codified is Federal Rule of Civil Procedure 26(b)(3), which provides, in part:

> (3) **Trial Preparation: Materials**.... [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation

Material that reflects an attorney's mental impressions, conclusions, opinions or legal theories, is referred to as "opinion work product." *Upjohn Co. v United States*, 449 U.S. 383, 399 (1981).[4] At issue in this case are documents reflecting the mental impressions, conclusions, opinions or legal theories of Scarola and Searcy Denney (along with all the other attorneys and law

---

[4] Federal courts apply federal law to resolve issues of privilege under the work product doctrine. *Developers Surety & Indemnity Co. v. Harding Village, Ltd.*, Case No. 06-21267-CIV, 2007 WL 20121939 (S.D. Fla. July 11, 2007).

firms part of the plaintiffs' counsel group) in the ongoing Chiquita Litigation. "Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and mental impressions of an attorney." *Hickman*, 329 U.S. at 510. As Rule 26(b)(3) makes apparent "opinion work product cannot be discovered upon a showing of substantial need and an inability to secure the substantial equivalent of the material by alternative means without undue hardship." *Cox v. Administrator U.S. Steel & Carnegie*, 17 F. 3d 1386, 1422 (11th Cir. 1994) (*quoting In re Murphy*, 560 F. 2d 326, 336 (8th Cir. 1977)). Instead, "opinion work product enjoys a nearly absolute immunity and can be discovered only in rare and extraordinary circumstances." *Id.*; *Williamson v. Moore*, 221 F. 3d 1177, 1182-83 (11th Cir. 2000) (opinion work product enjoys "almost absolute immunity" from discovery).

Moreover, the fact that the opinion work product sought in this case was exchanged by a group of counsel with a common legal interest does not alter this analysis. The common legal interest rule enables litigants who share unified interests to exchange privileged information to adequately prepare their cases without losing the protection afforded by a privilege. *See Maplewood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 606 (S.D. Fla. 2013). Pursuant to the doctrine, attorneys representing clients with similar legal interests can share information without risk of being compelled to disclose such information generally. *Id.*[5] As noted above, Drummond has an exceedingly heavy, if not insurmountable, burden in order to obtain the documents sought in the subpoenas. Scarola and Searcy Denney are entitled to have

---

[5] The joint defense doctrine is an extension of the work product doctrine and allows parties facing a common litigation opponent to exchange privileged communications and attorney work product in order to prepare a common defense without waiving either privilege. *Fojtasek v. NCL (Bahamas) Ltd.*, 262 F.R.D. 650, 654 (S.D. Fla. 2009); *United States v. McPartlin*, 595 F.2d 1321, 1336 (7th Cir.1979); *Continental Oil Co. v. United States*, 330 F.2d 347, 350 (9th Cir.1964).

the subpoenas quashed as improperly seeking privileged documents consisting of attorney work-product.

### Subpoena Compliance Imposes Significant Costs and Efforts

Even assuming arguendo that Drummond could overcome the "almost absolute immunity" afforded the Scarola and Searcy Denney opinion work product, quashing the subpoenas and entering a protective order would also be appropriate given the undue burden and significant costs associated with compliance. As of the filing of this Motion, Scarola and Searcy Denney are attempting to ascertain whether it possesses documents responsive to the ten categories in the subpoenas. It is believed that there may not be any documents in possession of Scarola and Searcy Denney that are responsive to categories 4, 8 and 10,[6] while there may be documents that are responsive to the remaining categories. To verify this, as well as locate and produce all responsive documents, Scarola and Searcy Denney would incur a significant burden and expense.

As indicated by the affidavit of John C. Hopkins, who is in charge of Searcy Denney's eDiscovery compliance, attached hereto as Exhibit D, Searcy Denney, like many law firms in the 21st Century, has shifted towards a paperless environment, storing the vast majority of documents, including emails, in an electronic format. Hopkins Affidavit, ¶ 5. In other words, there does not exist physical files containing hard copies of all documents and emails related to the Chiquita Litigation. Hopkins Affidavit, ¶ 6. Thus, in order to produce just emails that are responsive to the subpoenas would require locating, uploading and searching through the emails of all Searcy Denney attorneys who have worked on the Chiquita Litigation. Hopkins Affidavit, ¶ 7.

Searcy Denny uses a case management system called TrialWorks, which allows an attorney to store particular documents and emails that they may generate, send or receive in connection with

---

[6] Of course, to the extent documents would exist they would be privileged as attorney work-product.

specific cases. Hopkins Affidavit, ¶ 8. To comply with the subpoenas, Scarola and Searcy Denney would initially have to search through the TrialWorks system for key words reflected in the requests contained in the subpoenas. Hopkins Affidavit, ¶ 9. If not contained in TrialWorks, the other, far larger repository for responsive documents would be Searcy Denney's Outlook exchange server. Hopkins Affidavit, ¶ 10. The exchange server would have to be searched by individual attorney who worked on the Chiquita Litigation using appropriate key word searches. Hopkins Affidavit, ¶ 11. It is estimated that such a search of these attorneys would require going through in excess of 475,000 emails. Hopkins Affidavit, ¶ 12. Finally, another repository of potential documents are the case files of the 451 plaintiffs represented by Scarola and Searcy Denney in the Chiquita Litigation, along with the master file which could contain documents not particular to an individual plaintiff. Hopkins Affidavit, ¶ 13.

Scarola and Searcy Denney have preliminarily estimated the costs of compliance, searching through TrialWorks, the Outlook exchange system and the case files to be approximately $140,000. Hopkins Affidavit, ¶ 14. This costs breaks down to 290 man hours at $200 per hour for review of the exchange server and TrialWorks, 454 man hours for review of the client and master files, with an additional approximate $10,000 for search and retrieval. Hopkins Affidavit, ¶ 15. A significant factor in the both the high burden and costs associated with compliance with the subpoenas is the overbroad nature of the categories of documents sought. Hopkins Affidavit, ¶ 16. For example, document category 1 seeks all communications, including emails that Searcy Denney had with "Terrence P. Collingsworth *or any employee of Conrad & Sherer, LLP*." (emphasis added). Similarly, document category 2 seeks all communications that Searcy Denney had "*with any employee, agent or shareholder of Parker Waichmann, LLP*." (emphasis added). Hopkins Affidavit, ¶ 17. Casting a net so large to include communication of employees and agents of one

law firm to all the employees and agents of another, among other things, has both cost and burden implications that Scarola and Searcy Denney should not required to have to deal with.

### In The Unlikely Event Production is Required – Drummond Must Bear the Costs of Same and Is Liable for Sanctions in Connection with Same

Rule 45(d) provides two related avenues by which a person subject to subpoena may be protected from the costs of compliance: cost-shifting under Rule 45(d)(2)(B(ii) and sanctions under Rule 45(d)(1). *Legal Voice v. Stormans, Inc.*, 738 F. 3d 1178, 1184 (9th Cir. 2013). As a result, Drummond is required to pay the significant costs associated with compliance with the subpoenas and Scarola and Searcy Denney, as non-parties, are entitled to sanctions from Drummond.

Under the Federal Rules "the presumption is that the responding party must bear the expense of complying with discovery requests," *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978), but the Federal Rules protects subpoenaed non-parties from "undue burden or expense." Fed.R.Civ.P. 45(d)(2)(B)(ii). Rule 45(d)(2)(B)(iii) states that when a court orders compliance with a subpoena over an objection, "the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Under the 2013 amendment to Rule 45, the Court must shift to person issuing the subpoena, any non-party's subpoena compliance costs if they are significant. *Legal Voice*, 738 F. 3d at 1184. "This language leaves no room for doubt that the rule is mandatory." *Id.* Based on the foregoing, the only two considerations relevant under this Rule is (1) whether the subpoena imposes expenses on the non-party, and (2) whether those expenses are significant. *Id.*; *Linder v.Calero-Portocarrero*, 251 F. 3d 178, 182 (D.C. Cir. 2001). In this instances, both of the considerations have been met – Scarola and Searcy Denney are non-parties and the expenses related to compliance are significant.

9

Moreover, Scarola and Searcy Denney are entitled to sanctions from Drummond in connection with the subpoenas and the response to same. Federal Rule 45(d)(1), captioned "avoiding undue burden or expense; sanctions," requires a party or attorney responsible for issuing and serving a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." "The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Fed.R.Civ.P. 45(d)(1).

"When analyzing whether a subpoena places an undue burden on a nonparty, courts consider issues such as relevance, the requesting party's need for the documents, the breadth of the request, the time period covered, the particularity with which the documents are described, and the burden imposed in responding." *Ebert v. C.R. Bard, Inc.*, Case No. 1:13-MC-277, 2014 WL 1365889, at *2 (M.D. Pa. April 7, 2014); *Green v. MOBIS Alabama, LLC*, Case No. 2:12CV277-MEF, 2014 WL 2041857, ar *2 (M.D. Ala. May 16, 2014).

In this instance, sanctions are more than appropriate as there is no relevance between discussions between plaintiffs' counsel in the Chiquita Litigation and the Alabama Litigation. Additionally, the documents sought are privileged attorney work-product.[7] More fundamentally, there is no need for Drummond to seek these documents from Scarola and Searcy Denney. Indeed, the question which this Court should ask is – Why is Drummond harassing Scarola and Searcy Denney for documents related to discussions among plaintiffs' counsel, when Collingsworth and Conrad & Sherer are members of the same plaintiffs' counsel group and Drummond could easily

---

[7] Further, as pointed out above, most of the requests are related to a limited amount of topics, but are overly broad in the amount of individuals implicated in the requests and the documents which would have to be reviewed in order to insure compliance.

seek the same documents from them in the Alabama Litigation? In short, sanctions are warranted under Rule 45(d)(1). Accordingly, Scarola and Searcy Denney are entitled to their attorneys' fees in connection with the quashing of the subpoenas.

WHEREFORE, Scarola and Searcy Denney respectfully request the Court to enter an Order quashing the Drummond subpoenas, entering a protective order as to the subpoenas, awarding fees and costs in connection with same, and, alternatively, imposing the cost of any subpoena compliance on Drummond, along with all such relief which is just and necessary.

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via E-mail, and by Facsimile to all Counsel on the attached list this _19th_ day of September 2014.

JACK SCAROLA
Florida Bar No.: 169440
WILLIAM B. KING
Florida Bar No.: 181773
Attorney E-Mail: jsx@searcylaw.com
Primary E-Mail: eservice@searcylaw.com
Secondary E-Mail: ScarolaTeam@searcylaw.com
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409
Phone: (561) 686-6300
Fax: (561) 383-9465

## **COUNSEL LIST**

William Anthony Davis, III
tdavis@starneslaw.com
H. Thomas Wells, III
twells@starneslaw.com
Benjamin T. Presley
bpresley@starneslaw.com
Starnes Davis Florie LLP
P.O. Box 59812
Birmingham, AL 35259
Telephone: (205) 868-6000
Fax: (205) 868-6099
Attorneys for Drummond Company, Inc.

Sara E. Kropf
Law Office of Sara Kropf, OLLC
101 G Street NW, Suite 800
Washington, D.C. 20001
Telephone: (205) 627-6900
Fax: (202) 347-0316
sara@kropf-law.com
Attorney for Drummond Company, Inc.