**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 14-MC-81189-MIDDLEBROOKS**


DRUMMOND CO., INC.,
      *Plaintiff*,

     v.

TERRENCE P. COLLINGSWORTH, *et al.*
      *Defendants.*
_____/


**NON-PARTY LAW FIRMS' AND ATTORNEYS' MOTION TO INTERVENE,**
**AND TO QUASH AND/OR MODIFY SUBPOENA DUCES TECUM**
**AND/OR FOR PROTECTIVE ORDER**

# TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES ......................................................................................... ii

I. INTRODUCTION .................................................................................................... 1

II. BACKGROUND ..................................................................................................... 3

III. ARGUMENT ......................................................................................................... 4

A.   Movants may intervene to protect their rights ........................................ 4

B.   The Subpoenas must be quashed or modified because Movants' work product is privileged and not subject to production ............................................ 5

    1.   Federal law protects attorney work product, including Rule 45 ................ 6

    2.   The Subpoenas seek substantial attorney opinion work product ............... 7

    3.   The work product doctrine is not displaced by Rule 26(b)(3) .................... 8

    4.   Under Rule 45, *Hickman*, and Rule 26(c), non-party attorneys' work product is protected .................................................................................. 9

    5.   There has been no showing of relevance for any of Movants' work product 12

    6.   There has been no waiver of work product protection ............................. 13

C.   The Subpoenas must be quashed or modified because they seek unretained expert opinion ...................................................................................... 14

D.   Production would place an undue burden on Movants. ......................... 15

E.   A privilege log s unnecessary and unduly burdensome at this stage ................... 18

F.   If not entirely quashed, the Subpoenas should be modified and a protective order imposed ................................................................................................. 19

G.   Position of Drummond's counsel ......................................................... 20

CONCLUSION .......................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**                                                          **PAGE(S)**

*Abdell v. City of New York*, No. 05 Civ. 8453 KMF JCF, 2006 WL 2664313 (S.D.N.Y.
    Sept. 14, 2006) ..................................................................................................11

*Aeritas, LLC v. Delta Airlines, Inc.*, Civ. No. 1:13-CV-00346-RWS-WEJ,  2013 WL
    454452 (N.D. Ga. Feb. 17, 2013) ......................................................................16

*Am. Fed'n of State, Cnty & Mun. Employees (AFSCME) Council 79 v. Scott*, 277 F.R.D.
    474 (S.D. Fla. 2011)........................................................................................9, 11

*Aragon v. San Jose Ditch Ass'n,  County*, No. CIV 10-0563 JB/RHS, 2011 WL 5223017
    (D.N.M. Oct. 3, 2011) .........................................................................................14

*Buchanan v. Am. Motors Corp.*, 697 F.2d 151 (6th Cir. 1983) ....................................14

*Callaway v. Papa John's USA*, No. 09-61989-CIV, 2010 WL 4024883 (S.D. Fla. Oct.
    12, 2010)...............................................................................................................8

*Carnes v. Crete Carrier Corp.*, 244 F.R.D. 694 (N.D. Ga. 2007) .............................9, 11

*Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386 (11th Cir.) *opinion modified on reh'g*
    30 F.3d 1347 (11th Cir. 1994) ...........................................................................6, 7

*In re In re Chiquita Brands Int'l, Inc., Alien Tort Statute & Shareholder Derivative*
    *Litigation*, 792 F. Supp. 2d 1301 (S.D. Fla. 2011) .............................................3, 7

*Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc.*, 216 F.R.D. 533 (M.D. Fla.
    2003) ...................................................................................................................15

*In re Doe*, 662 F.2d 1073 (4th Cir. 1981) .....................................................................7

*In re Duque*, 134 B.R. 679 (S.D. Fla. 1991) ..........................................................15, 16

*Fadalla v. Life Auto Products, Inc.*, 258 F.R.D. 501 (M.D. Fla. 2007) *on reconsideration*
    *in part*, No. 3:07-MC-42-J-32MCR, 2008 WL 68594 (M.D. Fla. Jan. 4, 2008) ....................19

*Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211 (11th Cir.
    1993) .....................................................................................................................4

*Hickman v. Taylor*, 329 U.S. 495 (1947)......................................................... *passim*

*Kearney for Kearney v. Jandernoa*, 172 F.R.D. 381 (N.D. Ill. 1997) ..........................19

*Metso Paper USA, Inc. v. Bostik, Inc.*, No. 3:08-CV-0772, 2011 WL 2746078 (M.D. Pa.
    July 13, 2011)......................................................................................................10

*In re Motion to Compel Compliance with Subpoena Direct to Dep't. of Veterans Affairs*, 257 F.R.D. 12 (D.D.C. 2009) ..................................................................................16

*Mitsui Sumitomo Ins. Co. v. Carbel LLC*, No. 09-21208-CIV, 2011 WL 2682958 (S.D. Fla. July 11, 2011) ..................................................................................19

*Moody v. I.R.S.*, 654 F.2d 795 (D.C. Cir. 1981) .........................................................5

*Peacock v. Merrill*, No. CA 05-0377-BH-C, 2008 WL 762103 (S.D. Ala. Mar. 19, 2008)..........13

*Rosa v. City of Seaside*, No. 05-03577 JF (HRL), 2009 WL 2382760 (N.D. Cal. July 29, 2009) ..................................................................................14

*Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622-23 (7th Cir. 2009) ....................6, 11

*Schaaf v. SmithKline Beecham Corp.*, No. 3:06CV120 J25TEM, 2006 WL 2246146 (M.D. Fla. Aug. 4, 2006) ..................................................................................15

*State ex rel. Butterworth v. Liquid Air Corp.*, 147 F.R.D. 253 (M.D. Fla. Nov. 20, 1992)............6

*Spitznagel v. R & D Italia, LLC*, No. 2:09-CV-824-FTM, 2011 WL 940052 (M.D. Fla. Mar. 17, 2011)..................................................................................5,18

*Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977) .........................................................5

*Stern v. O'Quinn*, 235 F.R.D. 663 (S.D. Fla. 2008) ..................................................................8, 9

*In re Student Finance Corp.*, No. 02-11620-JBR, 2006 WL 3484387 (E.D. Pa. Nov. 29, 2006) ..................................................................................10

*Tambourine Comercio Internacional SA v. Solowsky*, 312 F. App'x 263 (11th Cir. 2009)............9

*In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 631 (N.D. Ga. 2002).........................................8

*United States v. Jefferson County*, 720 F.2d 1511 (11th Cir. 1983)..............................................5

*United States v. Pfizer*, 560 F.2d 326, 336 (8th Cir. 1977).........................................................7

*Westinghouse Elec. Corp. v. Rep. of Philippines*, 951 F.2d 1414 (3d Cir. 1991)........................13

**FEDERAL RULES**

Fed. R. Civ. P. 24 ..................................................................................4

Fed. R. Civ. P. 26 ..................................................................................*passim*

Fed. R. Civ. P. 45 ..................................................................................*passim*

iii

**TREATISES**

Wright & Miller, 8 *Federal Practice & Procedure* § 2024 (3d ed.) ........................................9, 13

**NON-PARTY LAW FIRMS' AND ATTORNEYS' MOTION TO INTERVENE,
AND TO QUASH AND/OR MODIFY SUBPOENA DUCES TECUM
AND/OR FOR PROTECTIVE ORDER**

Non-party law firms and attorneys Cohen Milstein Sellers & Toll, PLLC ("Cohen Milstein"), EarthRights International ("ERI"), Boies Schiller & Flexner LLP ("Boies Schiller"), Jonathan Reiter, Paul Hoffman, Judith Brown Chomsky, and Arturo Carrillo (hereinafter "Movants"), recently became aware that their privileged work product and unretained expert opinions may be subject to production pursuant to document subpoenas directed to attorney Jack Scarola and his law firm, Searcy Denney Scarola Barnhart & Shipley, P.A. ("Searcy Denney"). Such production would constitute an undue burden and should be quashed for that reason. Pursuant to Federal Rules of Civil Procedure 24 and 45, Movants therefore move to intervene in this miscellaneous action and to quash and/or modify the subpoenas, and/or for a protective order.

## INTRODUCTION

"Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). But the Rule 45 document subpoenas served on Mr. Scarola and Searcy Denney here (the "Subpoenas") would cast a wide net over many attorneys' work product – including near-inviolate opinion work product – despite the fact that these attorneys have had nothing to do with the underlying action, and that there has been no showing of need or relevance, let alone any basis to lift any privilege. The Subpoenas should be quashed.

The Subpoenas arise out of the lawsuit *Drummond Co., Inc. v. Collingsworth*, No. 11-cx-3695-RDP-TMP (N.D. Ala. 2011) ("*Drummond* Suit"), a libel suit against attorney Terrence Collingsworth and his firm, Conrad & Scherer. But the Subpoenas largely seek communications among plaintiffs' counsel, including Movants, in an unrelated multi-district litigation in this District, *In re: Chiquita Brands Int'l, Inc., Alien Tort Statute & Shareholder Derivative Litig. ("Chiquita* MDL"), No. 08-01916-MD-MARRA (S.D. Fla.), a lawsuit against Chiquita arising

1

out of its federal criminal conviction for illegally providing material support to paramilitary terrorist organizations in Colombia. The documents sought by the Subpoenas are almost all or entirely protected work product and unretained expert opinions relating to the *Chiquita* MDL. Movants have played no part in the *Drummond* Suit and fail to see the relevance of their work product to that suit.

Because the Subpoenas seek presumptively privileged materials, without any adequate showing to lift such privileges, they should be quashed; at a minimum, the Subpoenas should be modified to seek only relevant, discoverable documents not including Movants' work product, and a protective order imposed. Although this Court previously denied Mr. Scarola's motion to quash, *see* DE 24, Movants have an independent right to protect their own privileges.

Movants are not co-counsel with either Mr. Collingsworth or Mr. Scarola, and have not been the subject of any accusations of wrongdoing.  Movants are counsel for plaintiffs in three coordinated cases in the *Chiquita* MDL; Mr. Scarola and his co-counsel represent plaintiffs in another such coordinated suit, as does Mr. Collingsworth.[1] Nonetheless, Movants have necessarily exchanged confidential litigation strategy with Mr. Collingsworth and Mr. Scarola due to the need to coordinate within the *Chiquita* MDL.

The Subpoenas are far broader than the apparently relevant inquiry – documents relating to payments to witnesses in the *Drummond* Suit – and there has been no finding of any basis to lift any work product protection. This kind of fishing expedition presents serious risk of providing unfair advantage to Movants' current and prospective adversaries, and it also represents an effort by Drummond to free-ride on Movants' research and work, in violation of both the work product rule and the protection against discovery of unretained expert opinion.

Allowing such discovery would place significant burdens on Movants and chill their ability to coordinate on confidential litigation strategy.  At this stage, given the volume of material subject to production, even producing a document-by-document privilege log would be

---

[1]  Additionally, attorney Paul Wolf separately represents plaintiffs in several other coordinated *Chiquita* MDL suits.

highly burdensome – and highly unnecessary, given the obviously privileged nature of this entire inquiry. Because Movants, as third parties to the Subpoenas, are in no position to control the production of documents, they seek to quash the Subpoenas in their entirety.

Importantly, and as far as Movants are aware, any document that Drummond is seeking in this third-party discovery action is available to Drummond in the party discovery before Judge Proctor.  Claims to privilege, similar to those made here, are pending before Judge Proctor. *Drummond Co. v. Collingsworth*, 2:11-cv-3695-RDP (N.D. Ala.). The potential for multifarious rulings is itself grounds for quashing the Subpoenas now, as is Drummond's ability to obtain the same documents through party discovery.

## BACKGROUND

The Subpoenas purportedly seek information relevant to the *Drummond* Suit, a libel suit against Mr. Collingsworth arising out of statements concerning Drummond's alleged participation in human rights abuses by paramilitaries in Colombia – participation that Drummond has repeatedly denied.  The *Chiquita* MDL is an entirely distinct human rights lawsuit concerning Chiquita's admitted violations of federal law in providing funding to some of the same Colombian paramilitary groups and recording those transfers as payments for "security services." *See In re In re Chiquita Brands Int'l, Inc., Alien Tort Statute & Shareholder Derivative Litigation*, 792 F. Supp. 2d 1301, 1310 (S.D. Fla. 2011).

Neither Movants nor Mr. Scarola are parties or counsel in the *Drummond* Suit.  Their only involvement arises out of the fact that Mr. Collingsworth is also counsel on one of the coordinated *Chiquita* MDL suits.

The Subpoenas largely seek documents and communications "relating to (a) the provision of security in Colombia or (b) payments to witnesses or any Colombian paramilitary." *See* DE 1-2, DE 1-3. They are not, on their face, limited to payments to witnesses in the *Drummond* Suit, or payments to paramilitaries who are witnesses in the *Drummond* Suit, or the provision of security to Colombian witnesses in the *Drummond* Suit, or payments made by Mr. Collingsworth or his law firm.

Movants have, for the past six years, communicated with Mr. Collingsworth and Mr. Scarola in order to coordinate their filings and strategy in the *Chiquita* MDL.  This included emails to a list of plaintiffs' counsel. At many points all plaintiffs' counsel have come together in joint filings, coordinated on this list, and all parties to these communications understood that they were confidential. *See* Declaration of Marco Simons ("Simons Decl.") ¶¶ 8-16. Nonetheless, Paul Wolf, an attorney who later decided not to coordinate with the remainder of the plaintiffs' counsel in the *Chiquita* MDL and was thus removed from the list at that point, *id.* ¶¶ 17-18 & 20-22, apparently provided some of these confidential communications to Drummond's counsel, in clear violation of his ethical duties. Despite Mr. Wolf's unprofessional conduct, there has been no waiver of any privilege.

Movants' only knowledge of any payments to witnesses in the *Drummond* Suit comes from Mr. Collingsworth; they have no firsthand knowledge of any relevant information. Simons Decl. ¶ 35.  To the extent that Drummond seeks their research and opinions concerning the legality and ethics of advancement and reimbursement of case-related expenses to fact witnesses, such attorney opinion is absolutely protected from discovery in the absence of a showing of participation in a crime or fraud by Movants; Drummond and its counsel are not entitled to free-ride on Movants' research. To the extent that Drummond seeks anything that is not inviolate opinion work product, the Subpoenas still only address fact work product without any showing of relevance or basis for lifting that privilege.

Movants only recently learned about the scope of the Subpoenas and the likelihood of production of their privileged work product, and moved expeditiously to intervene and to quash.

## ARGUMENT

### A.  Movants may intervene to protect their rights.

Parties have a right to intervene under Rule 24(a)(2) where (1) their application is timely; (2) they have an interest "relating to the property or transaction which is the subject of the action;" (3) the proceeding "may impede or impair the ability to protect that interest;" and (4) "the existing parties to the lawsuit inadequately represent the interests." *Fed. Sav. & Loan Ins.*

4

*Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 215 (11th Cir. 1993).

Movants meet these requirements. Timeliness is assessed from the prospective intervenors' knowledge that their interests might be affected, *United States v. Jefferson County*, 720 F.2d 1511, 1516 (11th Cir. 1983); here, Movants only learned this past week that their work product was in danger of production. Simons Decl. ¶ 37. Although Movants knew about the Subpoenas at an earlier date, *id.* ¶ 36, it is their knowledge of the potential impairment of their interests, not their knowledge of the action, that is relevant here. *Stallworth v. Monsanto Co.*, 558 F.2d 257, 265 (5th Cir. 1977). To the extent that Drummond suggests that Movants have delayed, any prejudice it claims due to the alleged delay must be considered together with the considerable prejudice that Movants would face if intervention is denied. *Jefferson County*, 720 F.2d at 1516.

Attorneys have an individual and protectable interest in their work product. *E.g.*, *Moody v. IRS*, 654 F.2d 795, 801 (D.C. Cir. 1981) ("[T]he work product privilege creates a legally protectable interest in two parties: lawyer and client."). Disclosure of privileged attorney work-product works the exact mischief that the protection was created for: exposing the deliberate and private impressions of attorneys. Because the privilege belongs to the attorney and his or her client, attorneys have been allowed to intervene to protect their own work product. *See e.g.*, *Spitznagel v. R & D Italia, LLC*, No. 2:09-CV-824-FTM, 2011 WL 940052, at *3 (M.D. Fla. Mar. 17, 2011).

Finally, while Mr. Scarola and Searcy Denney may have a parallel interest in protecting their *own* work product, they do not have an equivalent interest in protecting *Movants'* work product. *Id.* at *4. Movants' interests are therefore not adequately protected by Mr. Scarola's participation, and Movants have a right to assert their own privileges and arguments for protection.

## B. The Subpoenas must be quashed or modified because Movants' work product is privileged and not subject to production.

Attorney work product protection does not arise from the Federal Rules of Civil

Procedure. It arises primarily from the Supreme Court's decision in *Hickman v. Taylor*, and its progeny, which established that work product is presumptively privileged, and that absent a showing of crime fraud, opinion work product is nearly inviolate. While the protection of work product from discovery has been partially codified in the Federal Rules, the rules are an incomplete guide to the scope of this protection. In this case, the privilege is protected under Rule 45 and the common law, and informed by Rule 26.

Attorney work-product protection and the "privacy" it affords attorneys is necessary because without it "much of what is now put down in writing, would remain unwritten," creating adverse impacts on the administration of justice. *Hickman*, 329 U.S. at 510-11. Drawing on the reasoning of *Hickman*, courts have recognized two primary purposes of work product protection: (1) ensuring that attorneys have the freedom to candidly and freely consider issues in the course of their representation (a freedom that would be chilled if work product was opened up to discovery) and (2) preventing unfair and unearned advantages to litigants that "piggyback" on another's hard work, which would otherwise deter attorneys from pursuing investigations. *See Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 621-22 (7th Cir. 2009); *State ex rel. Butterworth v. Liquid Air Corp.*, 147 F.R.D. 253, 255 (M.D. Fla. 1992) (recognizing *Hickman*'s "twin policy rationales"). Both concerns are present here. Allowing discovery of Movants' mental impressions and strategies would present a real danger of giving an unfair advantage to current or prospective adversaries, and it would allow Drummond and its counsel to free ride on Movants' work. It cannot be allowed.

### 1.  Federal law protects attorney work product, including under Rule 45.

Under Rule 45, a court *must* quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. Proc. 45(c)(3)(A)(iii). Federal law governs the protection of attorney work product in federal courts – those rules have long recognized near-total protection for attorneys' opinion work product (so long as it was produced in anticipation of litigation). *See Hickman*, 329 U.S. at 510 (attorney opinions "fall outside the arena of discovery"); *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d

1386, 1422 (11th Cir.), *op'n modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994). Opinion work product includes an attorney's "mental impressions, conclusions, opinions, or legal theories" that are prepared in anticipation of litigation or for trial.  *Cox.* 17 F.3d at 1422. Absent "extraordinary circumstances" – such as a *prima facie* case of participation in a crime or fraud – attorney opinions are not discoverable. *See In re Doe*, 662 F.2d 1073, 1079 (4th Cir. 1981); *United States v. Pfizer*, 560 F.2d 326, 336 (8th Cir. 1977). No such circumstances exist here.

   **2.   The Subpoenas seek substantial attorney opinion work product.**

   The entire *Chiquita* MDL concerns payments to paramilitaries in Colombia for alleged security services. *See In re Chiquita Brands Int'l, Inc.*, 792 F. Supp. 2d 1301; Simons Decl. ¶ 27. And the entire purpose of communications between Movants and Mr. Scarola, to which Mr. Collingsworth was also a party, was to coordinate the litigation in that case. Simons Decl. ¶¶ 8-11. Thus, by calling for Mr. Scarola's documents relating to security services in Colombia and payments to paramilitaries, the Subpoenas – on their face – call for the production of Movants' opinion work product. *See* DE 1-2, DE 1-3; *see also* Simons Decl. ¶¶ 24-34.

   Subpoena Request #1 arguably encompasses the entire course of strategic internal communications among *Chiquita* MDL counsel, including Movants. Simons Decl. ¶¶ 25-28. Requests #2, #3, and #6 – seeking similarly broad communications with other counsel who have been part of the *Chiquita* MDL list, and records of meetings in which Mr. Collingsworth participated (i.e. all meetings of *Chiquita* MDL counsel) – likewise encompass vast amounts of attorney opinion work product. Simons Decl. ¶¶ 29-30. Indeed, because the entire purpose of this email list was to coordinate litigation strategy and because counsel such as Mr. Collingsworth and Mr. Scarola have little else to communicate about, the Subpoenas seek almost exclusively attorney opinion work product. All communications to the *Chiquita* MDL list should be presumptively considered attorney opinion work product.

   Even with respect to the more narrowly-drawn requests – such Requests #7 and #8, which apparently apply to specific inquiries about witness payments – the Subpoenas seek opinion work product by Movants. Simons Decl. ¶ 31.  These requests concern responses to a

particular confidential email sent by Mr. Scarola (and improperly disclosed by Mr. Wolf), and some Movants responded to this email with their own opinions and research regarding the legal and ethical issues. *Id.*  There is nothing improper about this – in connection with the *Chiquita* MDL, Movants researched and analyzed a variety of legal and factual issues in that case, including what types of case related-expenses can be advanced or reimbursed to fact witnesses. Simons Decl. ¶ 35. This work is quintessential opinion work product, protected from disclosure under Rule 45(c)(3)(A)(iii).

### 3.   The work product doctrine is not displaced by Rule 26(b)(3).

This Court previously ruled that Rule 26(b)(3) only applies to work product of attorneys in the same action, and thus that Mr. Scarola's documents did not fall under the work product protection. DE 24. But Rule 26(b)(3) has not wholly displaced the federal common law protection for attorney work product. *See In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 631, 634 (N.D. Ga. 2002) ("The work product doctrine was *partially* codified [ ] in Rule 26(b)(3) . . ." (emphasis added)). So the protections afforded under Rule 26(b)(3) should not be read as negating protections otherwise available under the common law, and applicable through Rule 45, as well as Rule 26(c). In situations not provided for by the terms of Rule 26(b)(3), *Hickman* remains the operative framework. *See Stern v. O'Quinn*, 235 F.R.D. 663, 674 (S.D. Fla. 2008).

Rule 26(b)(3) allows for the production of "tangible things that are prepared in anticipation of litigation or for trial *by or for another party*" if they are relevant and the moving party shows a "substantial need" and that the "substantial equivalent" is unavailable to them. Fed. Rule Civ. P. 26(b)(3)(A) (emphasis added). Under this rule, however, a party's opinion work product is always excluded from discoverability. *Id.* R. 26(b)(3)(B).

Where materials are not addressed by Rule 26(b)(3), the result is not that such materials are not protected, but that the common-law *Hickman* framework applies. For example, "the Rule applies only to 'documents and tangible things' and only at the discovery stage." *Callaway v. Papa John's USA, Inc.*, No. 09-61989-CIV-ZLOCH, 2010 WL 4024883, at *6 (S.D. Fla. Oct. 12, 2010). "Therefore, where a party invokes work-product protection as it involves non-tangible

things, such as testimony, or it relates to a different stage of the litigation than discovery, courts must look to *Hickman v. Taylor*." *Stern*, 235 F.R.D. at 674.

Just as Rule 26(b)(3) only addresses the discovery of tangible things, it also only addresses party discovery. It does not purport to govern Rule 45 non-party discovery. This Court relied on an unpublished decision of the Eleventh Circuit, *Tambourine Comercio Internacional SA v. Solowsky*, 312 F. App'x 263, 284 (11th Cir. 2009), in determining that Mr. Scarola's work product is not protected under Rule 26(b)(3). While *Tambourine Comercio Internacional* is not precedential, it – and similar cases interpreting Rule 26(b)(3) – also answers the wrong question. Because this is not party discovery, the question is not whether Rule 26(b)(3) protects the information from disclosure. The question is whether Rule 45, which expressly allows for quashing a subpoena that calls for "disclosure of privileged or other protected matter" – as such privilege is defined by *Hickman* – requires quashing the Subpoenas here. If Rule 26(b)(3) does not govern the protection of non-party work-product, that does not mean that the work-product doctrine is inapplicable; it means that the inquiry is governed by the common law rule of *Hickman*. *Cf. Stern*, 235 F.R.D. at 674.

### 4. Under Rule 45, *Hickman*, and Rule 26(c), non-party attorneys' work product is protected.

In the case of non-parties, courts and observers have both held that, regardless of Rule 26(b)(3), non-parties are nonetheless protected by and may claim work product protection under Rule 45 and *Hickman*.  *See* Wright & Miller, 8 Fed. Prac. & Proc. § 2024 – The Work-Product Rule – Matters Protected by the Work-Product Rule (3d ed.) (While "[d]ocuments prepared for one who is not a party to the present suit are wholly unprotected by Rule 26(b)(3) . . . it must be remembered that protection may exist under *Hickman v. Taylor* . . . so long as the materials in question were prepared in anticipation of litigation by an attorney."); *Am. Fed'n of State, Cnty. & Mun. Employees (AFSCME) Council 79 v. Scott*, 277 F.R.D. 474 (S.D. Fla. 2011) (denying discovery of documents prepared by a nonparty nonprofit organization); *Carnes v. Crete Carrier Corp.*, 244 F.R.D. 694, 699 (N.D. Ga. 2007) ("Although the text of Rule 26(b)(3) appears to

9

limit work product to parties, Rule 26(c), Rule 45, and *Hickman* suggest that the scope of protection should extend to a non-party [ ] under [these] facts."); *Metso Paper USA, Inc. v. Bostik, Inc.*, No. 3:08-CV-0772, 2011 WL 2746078, at *1 (M.D. Pa. July 13, 2011) ("[W]ork product protection may apply to non-parties' work product 'when doing so accords with the purposes of the privilege set out in *Hickman v. Taylor*.'"); *In re Student Finance Corp.*, No. 02-11620 JBR, 2006 WL 3484387, at *10 (E.D. Pa. Nov. 29, 2006) (same) (specifically referencing the purpose of avoiding a chilling effect on representation).

The purposes of the work product doctrine remain relevant in the context of non-party attorneys' work. Even if the only motivating concern behind the doctrine were discovery by adversaries, the concern with chilling attorneys' ability to formulate their legal theories because of fear of disclosure does not arise only when a current direct adversary is the beneficiary of the revelation. Indeed, as the Simons Declaration notes, the Movants "would not have shared candid assessments of litigation strategy, legal research, and drafts of filings" critical to competent representation in the Chiquita MDL without the understanding that these communications were privileged and confidential. Simons ¶ 10. There are a variety of scenarios in which disclosure to Drummond or its numerous counsel would severely threaten the adversarial process and prejudice Movants.

While Drummond has offered not to provide the documents to Chiquita and its counsel, Simons Decl. ¶ 40, it is difficult to conceive of a protective order that would be sufficient to address all possible prejudice. Great care would need to be taken to avoid any public disclosure. Drummond's counsel would need to be precluded from representing Chiquita in the future. But even that would not be enough. Some of Movants are frequent human rights litigators, who may be adverse to Drummond or its counsel in a future case; Movant EarthRights International, for example, has filed *amicus* briefs in two previous cases against Drummond (but not the *Drummond* Suit). Simons Decl. ¶ 7. The strategic discussions and mental impressions of attorneys in the *Chiquita* MDL may be relevant to such future litigation and thus Drummond's counsel would need to be precluded from *ever* litigating in opposition to Movants in any future

10

case. Providing a potential adversary with this insider's look would be unfair and unjust.  *See Carnes*, 244 F.R.D. at 699 (noting that "requiring UPS to provide its information to a potential adverse party" would be "unduly burdensome" and "unjust"). Moreover, the discovery would need to be kept to outside counsel only, and not shared with Drummond itself. Otherwise, Movants would be prejudiced should they decide to take a case against Drummond in the future, because that company would be privy to their confidential thoughts and strategies. These concerns illustrate why such discovery is almost never allowed.

The second underlying objective of the work product doctrine is prevent parties from abusing subpoenas to give themselves an undeserved windfall in accessing the fruits of another's substantial work and thought processes. *See Sandra T.E.*, 600 F.3d at 622 (7th Cir. 2009) (interpreting the work product doctrine enshrined in *Hickman* "to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts"); *Abdell v. City of New York*, No. 05 CIV. 8453 KMK JCF, 2006 WL 2664313, at *5 (S.D.N.Y. Sept. 14, 2006) (recognizing, *inter alia*, that one of the underlying purposes of the work product doctrine is to prevent "a windfall for indolent attorneys")*; Am. Fed'n of State, Cnty. & Mun. Employees (AFSCME) Council 79 v. Scott*, 277 F.R.D. 474, 478 (S.D. Fla. 2011) (quashing a subpoena where requesting party was "perfectly capable of performing their own research" on the issues briefed in the requested documents).

It is unclear what *fact* in the *Drummond* Suit the requested discovery would clarify; rather, giving Drummond's counsel access to Movants' opinions would simply provide the undeserved windfall. Movants' work-product involves legal research, analysis and strategy; Movants have no direct knowledge of any facts relating to payments to witnesses in the *Drummond* Suit. Simons Decl. ¶¶ 6, 35. What use to Drummond is this legal research, if not to "piggy-back" and avoid performing its own analysis?  Surely, they are "perfectly capable of performing their own research." *Scott*, 277 F.R.D. at 478.

**5.  There has been no showing of relevance for any of Movants' work product.**

Attorney opinion work product generally cannot be produced regardless of relevance. Fed. Rule Civ. P. 26(b)(3)(B). Under the Rule 26(b)(3) framework, however, fact work product may sometimes be produced upon a showing of "substantial need" with no equivalent information otherwise available. *Id.* Rule 26(b)(3)(A)(ii).

Here, there has been no showing of relevance for any of Movants' work product, let alone substantial need and unavailability. Movants have had no participation in the *Drummond* Suit and have no direct knowledge of any relevant facts. Simons Decl. ¶¶ 6, 35. This Court recognized that, in the *Drummond* Suit, Judge Proctor had accepted the relevance of discovery relating to two categories: 1) "payments to witnesses," and 2) "research relating to payments to witnesses." DE 24 at 4. But the Subpoenas are not drawn to focus on these categories. Additionally, Movants have no firsthand information on the first category, and the second category is presumptively inviolate opinion work product. Simons Decl. ¶¶ 6, 30-31, 35.

As noted above, the Subpoenas seek a broad swath of documents well beyond "payments to witnesses" in the *Drummond* Suit – they seek all documents relating to payments to witnesses and paramilitaries in Colombia and security services in Colombia, which encompasses the entire subject matter of the *Chiquita* MDL. DE 1-2, DE 1-3; Simons Decl. ¶¶ 24-34.

As for facts relating to "payments to witnesses" in the *Drummond* Suit, Movants have no relevant information. Simons Decl. ¶ 6. Thus, to the extent that there is any production pursuant to the Subpoenas, all of Movants' documents should be entirely redacted from that production. Drummond has made no showing that Movants have any relevant information in this category.

As to "research relating to payments to witnesses," regardless of whether *Mr. Collingsworth's* research on this topic is relevant in the *Drummond* Suit – as Judge Proctor ruled – it does not follow that any research by *Movants* is relevant. And even as to Mr. Collingsworth's own research, Judge Proctor left the question of work product protection open. *See* DE 17-33 at 4. It is hard to see how legal research would not be considered protected opinion work product, and it is even harder to see how such research by *Movants* has any relevance to the

*Drummond* Suit.

In short, Drummond has not shown that any of Movants' documents has any relevance to the *Drummond* Suit. At a minimum, all of Movants' communications and other work product should be excised from any production.

### 6.   There has been no waiver of work product protection.

Movants have not waived any work product protection by sharing their confidential opinions and strategy on the *Chiquita* MDL email list. Work product protection is not waived simply because the materials are shared with persons other than attorneys representing the same client. "[D]isclosure of a document to third persons does not waive the work product immunity unless it has substantially increased the opportunities for potential adversaries to obtain the information." Wright & Miller, 8 Fed Prac. & Proc § 2024 (3d ed.).

"Unlike the attorney-client privilege, 'the work-product privilege is not necessarily waived by disclosure to any third party'; rather, 'the courts generally find a waiver of the work product privilege only if the disclosure substantially increases the opportunity for potential adversaries to obtain the information.'" *Peacock v. Merrill*, No. CA 05-0377-BH-C, 2008 WL 762103, at *4 (S.D. Ala. Mar. 19, 2008) (collecting cases). *See also Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991) (observing that most courts hold that to waive the protection of the work-product doctrine, "the disclosure must enable an adversary to gain access to the information"). Movants had no reason to believe that, by sharing their work product with other plaintiffs' attorneys in the same MDL, they would substantially increase the likelihood of disclosure of this information. Simons Decl. ¶¶ 8, 20. Obviously, in hindsight, Movants' trust in Mr. Wolf was misplaced. Nonetheless, Mr. Wolf's ethical lapse could not have been anticipated by Movants; indeed, Movants removed Mr. Wolf from the general *Chiquita* MDL email list as soon as Mr. Wolf ceased cooperating with the other plaintiffs' counsel, and stopped communicating with Mr. Wolf altogether after Mr. Wolf disclosed confidential strategy information to Chiquita's counsel. Simons Decl. ¶¶ 17-18, 21-23. Movants have been diligent in protecting their documents; no waiver has occurred.

**C. The Subpoenas must be quashed or modified because they seek unretained expert opinion.**

In addition to being protected work product, Movants' legal research, memos, and strategic discussions are the uncompensated opinions of unretained experts. Under Rule 45(c)(3)(B)(ii), this provides an additional and independent basis for quashing or modifying the Subpoenas. That rule allows persons "subject to or affected by" the subpoena to seek to "quash or modify the subpoena." *See Rosa v. City of Seaside*, No. 05-03577 JF (HRL), 2009 WL 2382760, at *1 (N.D. Cal. July 29, 2009) (noting that Rule 45's safeguard allows a non-party to withhold subpoenaed information "when he is an unretained expert on the subject and the opinion or work product sought does not describe specific occurrences in dispute"); *Buchanan v. Am. Motors Corp.*, 697 F.2d 151, 152 (6th Cir. 1983) (affirming district court's decision to quash a subpoena that would otherwise burden an expert "with no direct connection with the litigation" with testifying and disclosing large amounts of data accumulated over the course of a long and detailed research study).

The expert opinions of lawyers qualify for protection under Rule 45(c)(3)(B)(ii). *See Aragon v. San Jose Ditch Ass'n, County*, No. CIV 10-0563 JB/RHS, 2011 WL 5223017, at *8 (D.N.M. Oct. 3, 2011) (finding that a lawyer with years of experience in water law has expertise he is "largely free to sell or give away" to whomever he wants). While the same policy rationale does not apply to experts adequately compensated for their services, Rule 45 recognizes that "compulsion to give evidence may threaten the intellectual property of experts *denied the opportunity to bargain for the value of their services*." Fed. R. Civ. Proc. 45 advisory committee's note (1985 Amendment) (emphasis added).

Movants include highly experienced litigators, experts in their field, knowledgeable on many issues that Drummond may be interested in. Several of the Movants are experienced practitioners under the Alien Tort Statute (ATS), and Drummond has faced several lawsuits under the ATS. Movant Paul Hoffman, for example, is an acclaimed litigator who has argued two ATS cases before the U.S. Supreme Court and published numerous works on various topics

in constitutional and international human rights law, among other accomplishments. Movants can think of many reasons why Drummond would want the uncompensated benefit of their legal research and strategic thinking – none of them valid.

Accordingly, the Subpoenas may be quashed independently under Rule 45(c)(3)(B)(ii), which establishes Movants' right to "withhold their expertise," particularly when the work product sought does not describe specific occurrences in dispute. R. 45(c)(3)(B)(ii). Movants' work product does not contain any facts regarding witness payments in the *Drummond* suit, because Movants have no firsthand knowledge of such alleged payments. Thus, according to the advisory committee's note, compelling Movants to "testify," albeit indirectly by permitting access to their privileged communications, would constitute a "taking of intellectual property." Fed. R. Civ. P. 45 advisory committee's note (1985 Amendment).

**D.  Production would place an undue burden on Movants.**

Regardless of whether the work product doctrine formally applies – and even if Rule 26(b)(3) were to govern here – the Court should still quash the Subpoenas because, for the reasons discussed above, production would place an undue burden on Movants.

Rule 45(c)(1) imposes an affirmative duty to avoid imposing undue burden or expense on non-parties. *See* Fed. R. Civ. Proc. 45(c)(1); *see also id.* R. 45(c)(2)(B). Courts have undertaken a case-specific balancing test wherein the court "must weigh factors such as relevance, the need of the party for the documents, the breadth of the document request, and the time period covered by the request against the burden imposed on the person ordered to produce the desired information." *Schaaf v. SmithKline Beecham Corp.*, No. 3:06CV120 J25TEM, 2006 WL 2246146, at *2 (M.D. Fla. Aug. 4, 2006) (citing *Farnsworth v. Procter & Gamble Company,* 758 F.2d 1545 (11th Cir. 1985)). *See also Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc.*, 216 F.R.D. 533, 535 (M.D. Fla. 2003). This balancing of benefits against burdens calls for the court to consider, *inter alia,* whether the information is necessary and unavailable from any other source. *In re Duque*, 134 B.R. 679, 683 (S.D. Fla. 1991).

Here, Drummond would require the production of Movant's confidential attorney

research and communications shared on an email list in which Mr. Collingsworth participated. Drummond has made no showing that Movants' materials – research and opinions of non-party counsel in the *Chiquita* case – are necessary, let alone relevant, to the claims at issue in the *Drummond* Suit. And, to the extent that Drummond seeks Mr. Collingsworth's own documents, it has not shown that those materials cannot be obtained directly from Mr. Collingsworth without burdening Movants with the disclosure of *their* own confidential communications. *In re Motion to Compel Compliance with Subpoena Direct to Dept. of Veterans Affairs*, 257 F.R.D. 12 (D.D.C. 2009) (even limited subpoena was unduly burdensome because there was no showing that information sought was unavailable from other sources); *In re Duque*, 134 B.R. 679, 683 (S.D. Fla. 1991).

Surely, it cannot be the rule that a non-party's mere participation with a defendant on a shared email list is enough to justify rifling through that non-party's confidential communications in order to obtain the *defendant's* own email communications. Indeed, as Judge Proctor's ruling demonstrates, Drummond is currently seeking Mr. Collingsworth's own documents regarding witness payments through party discovery in the underlying action, and thus has no reason to seek the same information from innocent third parties. To allow such a tactic would risk multifarious rulings by different federal courts; Judge Proctor and this Court, for example, could come to divergent opinions on whether the *same* document is privileged from production.

Until Judge Proctor resolves these issues and Drummond makes a showing that Mr. Scarola is in possession of relevant materials that cannot be obtained from Defendants themselves, there is no reason to burden Mr. Scarola or Movants with disclosure of their confidential materials. And even then, Drummond can and has made no showing why any non-duplicative documents that it could obtain from Movants would be relevant to any issue in the *Drummond* Suit, let alone necessary. *Aeritas, LLC v. Delta Airlines, Inc.*, 2013 WL 454452, *2 (N.D. Ga. 2013) ("[I]n the context of evaluating subpoenas issued to third parties, a court will give extra consideration to the objections of a non-party, non-fact witness in weighing

burdensomeness versus relevance.") (quoting *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D. N.C. 2005)).

Moreover, the Subpoenas are facially overbroad and would subject Movants to an unjustified intrusion into their confidential and proprietary materials. As discussed above, the Subpoenas could sweep up literally thousands of Movants' confidential materials. The Subpoenas seek a broad swath of documents well beyond payments to witnesses in the *Drummond* Suit – they target all documents relating to payments to witnesses and paramilitaries in Colombia and security services in Colombia, which encompasses the entire subject matter of the *Chiquita* MDL. Drummond made no efforts to limit its requests for documents and communications "relating to (a) the provision of security in Colombia or (b) payments to witnesses or any Colombian paramilitary" within the context of the *Drummond* suit. This was so, even as Drummond served a subpoena on a non-party that Drummond knew was acting as counsel in the *Chiquita* case – a case where payments by Chiquita to paramilitaries in Colombia and security services in Colombia is a material issue. Had Drummond intended to meaningfully comply with the strictures of Rule 45(c)(1), Drummond would have at least limited its requests to payments to witnesses in the *Drummond* Suit, or payments to paramilitaries who are witnesses in the *Drummond* Suit, or the provision of security to Colombian witnesses in the *Drummond* Suit.

Instead, Drummond's subpoena would unduly sweep up confidential and privileged documents and communications of non-parties such as Movants. This would not only give Drummond and its counsel an unfair litigation advantage in this and other cases where similar issues are implicated; it also unduly burdens Movants ability for candid preparation and exchange of strategic legal research and opinions. Indeed, any attorney who believes that communications among counsel may be subject to production will naturally take measures to prevent such disclosures, including by limiting free and open exchanges among counsel.

Even assuming that the formal requirements of the work product doctrine do not apply here, the same concerns animating that doctrine illustrate the burdens that Movants would face if

their documents were subject to production. As the Supreme Court explained in *Hickman*, if discovery of work product were permitted:

> [M]uch of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness, and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

329 U.S. at 511. Although the Court framed this in terms of disclosure to "opposing counsel," *id.*, most lawyers would object to disclosure to *anyone*, especially including counsel who are positionally adversarial on many legal issues (as Drummond's counsel is). Even if there is some formal exception here to the *privilege* that ordinarily protects work product, these effects undoubtedly constitute *burdens* that Movants would suffer if discovery were allowed here. Movants would be less inclined to write down and share their confidential opinions and legal research, and their clients would suffer as a result.

### E. A privilege log is unnecessary and unduly burdensome at this stage.

Rule 45 requires a party claiming privilege to "expressly make the claim" and "describe the nature of the withheld documents." Fed. R. Civ. Proc. 45(e)(2)(A). Movants have done so, in describing their documents as attorney work product in the *Chiquita* MDL. A more specific, document-by-document privilege log is unnecessary and inappropriate at this time.

Ordinarily, a nonparty intervening in opposition to a Rule 45 subpoena does not have to produce a log at the time of their intervention. *See Spitznagel v. R & D Italia, LLC*, No. 2:09-CV-824-FTM, 2011 WL 940052, at *4 (M.D. Fla. Mar. 17, 2011) (noting that "courts have confirmed that a nonparty's failure to prepare a privilege log in response to a subpoena does not waive any privilege").

Indeed, it would be incredibly burdensome for Movants to produce a privilege log based on the entire course of communications in the *Chiquita* MDL before this Court, and potentially Mr. Scarola and Drummond as well, acts conclusively to determine the scope of the Subpoenas. Simons Decl. ¶ 28. This would be inconsistent with Rule 45's direction of limiting "significant

expense" to non-parties.  Fed. R. Civ. Proc. 45(d)(2)(B)(ii); *see Mitsui Sumitomo Ins. Co. v. Carbel, LLC*, No. 09-21208-CIV, 2011 WL 2682958, at *5 (S.D. Fla. July 11, 2011) (adopting the Ninth Circuit's holistic approach to privilege waiver for failing to produce a privilege log, designed to prevent "needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process"). Before imposing the substantial cost of reviewing the entire *Chiquita* MDL  file and making document-by-document privilege log entries, this court should address the overarching objections presented.

## F.  If not entirely quashed, the Subpoenas should be modified and a protective order imposed.

Rule 45 expressly allows a court to "quash or modify" a subpoena as appropriate. In this case, while the Subpoenas are grossly overbroad and should be quashed in their entirety, at a minimum they should be modified to necessarily exclude any document prepared by Movants, and to require redaction of any of Movants' materials (such as may be presented in email chains) from any documents produced. As noted above, all of Movants' documents are presumptively work product, because all communications on the *Chiquita* MDL list were made for the purpose of coordinating their cases in the MDL. Drummond has not shown the relevance or need for any of these documents.

The Court should also issue an appropriate protective order for any of Movants' materials. While Rule 26(c) provides for authority for "the court where the action is pending" to issue a protective order, a Rule 45 court likewise has authority to issue protective orders regarding material sought through a Rule 45 subpoena. *See Kearney for Kearney v. Jandernoa*, 172 F.R.D. 381, 383 (N.D. Ill. 1997) (noting that "a protective order under Rule 26(c) can be sought/determined in the court where the underlying action is pending, as well as the court from which the subpoena is issued"); *Fadalla v. Life Auto. Products, Inc.*, 258 F.R.D. 501, 504 (M.D. Fla. 2007) *on reconsideration in part*, No. 3:07-MC-42-J-32MCR, 2008 WL 68594 (M.D. Fla. Jan. 4, 2008) (discussing the revelation of trade secret information and noting that a Rule 45 Court can quash or modify a subpoena or "may elect to order production of the requested

information only upon specified conditions"). As noted above, Movants are doubtful that any protective order could adequately address the concerns presented here, but if any of Movants' documents *are* produced, the strongest such order possible is essential.

### G. Position of Drummond's counsel.

Counsel for Movants spoke with counsel for Drummond on December 18, 2014, and can represent that Drummond opposes Movants' request to intervene as well as their motion to quash. Simons Decl. ¶¶ 38-39.

**CONCLUSION**

For the foregoing reasons, Movants Non-Party Law Firms and Attorneys respectfully request that this Court allow their intervention in this miscellaneous action, and quash the Subpoenas in their entirety or, as an alternative, modify the Subpoenas to exclude all documents reflecting Movants' work and issue the strongest possible protective order with respect to any of Movants' documents that are produced.


Dated: December 19, 2014                 Respectfully submitted,

                                         s/LESLIE M. KROEGER_____
                                         LESLIE M. KROEGER (Florida Bar No.: 989762)
                                         Email:  lkroeger@cohenmilstein.com
                                         **Cohen Milstein Sellers & Toll, PLLC**
                                         2925 PGA Boulevard, Suite 200
                                         Palm Beach Gardens, FL 33410
                                         Tel:  (561) 515-1400
                                         Fax:  (561) 515-1401

                                         Agnieszka M. Fryszman
                                         Benjamin D. Brown
                                         **Cohen Milstein Sellers & Toll, PLLC**
                                         1100 New York Ave., N.W.,
                                         West Tower, Suite 500
                                         Washington, D.C. 20005-3964
                                         Tel: 202-408-4600
                                         Fax: 202-408-4634

                                         Marco Simons
                                         Richard Herz

20

Jonathan Kaufman
Marissa Vahlsing
Michelle Harrison
**EarthRights International**
1612 K Street NW #401
Washington, DC 20006
Tel: 202-466-5188

Paul L. Hoffman
**Schonbrun DeSimone Seplow Harris & Hoffman LLP**
723 Ocean Front Walk
Venice, CA 90291
Tel: 310-396-0731
Fax: 310-399-7040

Judith Brown Chomsky
**Law Offices of Judith Brown Chomsky**
Post Office Box 29726
Elkins Park, PA 19027
Tel: 215-782-8367
 Fax: 202-782-8368

Arturo Carrillo
**Colombian Institute of International Law**
5425 Connecticut Ave., N.W., #219
Washington, D.C. 20015
Tel: 202-994-5794

Jonathan C. Reiter
**Law Firm of Jonathan C. Reiter**
350 Fifth Avenue, Suite 2811
New York, NY 10118
Tel: 212-736-0979
Fax: 212-268-5297

Lee S. Wolosky
Nicholas A. Gravante Jr.
**Boies, Schiller & Flexner LLP**
575 Lexington Ave.,
7th Floor New York, NY 10022
Tel: 212-446-2300 Fax: 212-446-2350

Douglass A. Mitchell
**Boies, Schiller & Flexner LLP**
300 South Fourth Street, Suite 800

21

Las Vegas, Nevada 89101
Tel: 702-382-7300
Fax: 702-382-275

## CERTIFICATE OF SERVICE

I certify that, on December 19, 2014, a copy of this Non-Party Law Firms' and

Attorneys' Motion to Intervene, and to Quash and/or Modify Subpoena *Duces Tecum* and/or for

Protective Order was electronically filed with the Court using CM/ECF.

Dated: December 19, 2014          By:     s/LESLIE M. KROEGER
                                          LESLIE M. KROEGER (Florida Bar No.: 989762)
                                          Email:  lkroeger@cohenmilstein.com
                                          **Cohen Milstein Sellers & Toll, PLLC**
                                          2925 PGA Boulevard, Suite 200
                                          Palm Beach Gardens, FL 33410
                                          Tel:  (561) 515-1400
                                          Fax:  (561) 515-1401