## DECLARATION OF MARCO SIMONS

I, Marco Simons, declare as follows:

1. I am an attorney and member of the bars of the states of Washington and California and of the District of Columbia, as well as of the U.S. Supreme Court, the U.S. Courts of Appeals for the D.C., Fourth, Ninth, and Eleventh Circuits, and several U.S. district courts. The facts stated herein are based on my personal knowledge. If called upon to do so I could and would competently testify thereto.

2. I am the Legal Director of EarthRights International, counsel for the plaintiffs in *Doe v. Chiquita Brands International, Inc.*, No. 08-80421-CIV-MARRA (S.D. Fla.), one of the cases in the coordinated multi-district *Chiquita Brands International, Inc. Alien Tort Statute and Shareholder Derivative Litigation* ("*Chiquita* MDL"), No. 08-01916-MD-MARRA (S.D. Fla.).

3. I provided a declaration to Jack Scarola, counsel for another one of the cases in the *Chiquita* MDL, in October 2014 in connection with subpoenas served upon him and his firm arising out of the *Drummond v. Collingsworth* matter. Some of the facts stated below were provided in that declaration, but I repeat them here for the convenience of the Court.

4. EarthRights International (ERI) is a nongovernmental, nonprofit human rights and environmental organization dedicated to using legal tools to protect communities around the world from human rights and environmental violations.

1

One of the tools that ERI has used since 1996 is transnational lawsuits in U.S. court against corporations under the Alien Tort Statute and other sources of legal authority, such as the *Chiquita* MDL.

5. The *Chiquita* MDL was transferred to the Southern District of Florida on February 20, 2008. It includes a lawsuit litigated by EarthRights International and its co-counsel at Cohen Milstein Sellers & Toll PLLC, Paul Hoffman, and Judith Brown Chomsky; a lawsuit litigated by Boies Schiller & Flexner LLP; and a lawsuit litigated by attorney Jonathan Reiter, all of whom are Movants in the instant proceeding. It also includes lawsuits litigated by Jack Scarola and Terry Collingsworth, and their respective law firms and co-counsel, and attorney Paul Wolf.

6. I have no direct connection to the *Drummond v. Collingsworth* case, and no direct knowledge of any facts regarding the underlying allegations in that case or any facts regarding alleged support to witnesses in that case; my only knowledge comes from Mr. Collingsworth (and perhaps his co-counsel at Conrad & Scherer). To the best of my knowledge, this is also true of my co-counsel and the other Movant attorneys.

7. ERI does, however, litigate similar issues to those that have arisen in the various human rights cases against Drummond Co. ERI has filed two *amicus* briefs in support of plaintiffs in *Romero v. Drummond* and *Doe v. Drummond*, on

questions of law that arose in those cases on which ERI attorneys have particular expertise. Those briefs are available online at

http://www.earthrights.org/publication/amicus-briefs-drummond-cases.

8.      Starting before the MDL transfer, counsel on the several Chiquita cases, facing similar motions to dismiss from Chiquita and a common interest in prosecuting their claims, consulted with each other on a confidential basis. To the best of my knowledge, all counsel understood that these conversations were privileged and confidential.

9.      Following the MDL, it was necessary for counsel on different cases to coordinate more closely, as we were required by court order or litigation strategy to make joint filings on behalf of multiple cases. All plaintiffs' counsel, including those referenced above, participated in these joint filings.

10.     All these plaintiffs' counsel also participated in multiple telephonic and in-person meetings to discuss litigation strategy, case management, MDL leadership structures, and other joint efforts to prosecute our cases. I specifically recall that, at multiple points in meetings and discussions among plaintiffs' counsel, one or more of plaintiffs' counsel expressly established that these discussions were protected by common interest, joint prosecution and/or work product privileges. I would not have shared candid assessments of litigation strategy, legal research, and drafts of filings among other lawyers without such an understanding.

11.  In order to facilitate communications among plaintiffs' counsel, EarthRights International set up and maintained an email list comprising only counsel and authorized support staff.

12.  I was the primary drafter for multiple filings on behalf of all counsel in the *Chiquita* MDL. I would have found it impossible to do so, and to solicit input from other counsel, without a mutual understanding that such communications were privileged and confidential.

13.  To the best of my knowledge, at no point did any plaintiffs' counsel suggest that such communications were not privileged and confidential. No one, including Mr. Wolf, has ever had permission from me to disclose or share any communications among counsel for the plaintiffs in the *Chiquita* MDL.

14.  Through 2012, all plaintiffs' counsel continued to coordinate and file joint briefs, and to have joint strategy discussions.

15.  At no point did I believe, or have any reason to believe, that by sharing confidential litigation strategy with the *Chiquita* MDL email list I would increase the likelihood that Chiquita or any other adversary would gain access to this work product.

16.  Through 2012, Mr. Wolf continued to participate in group discussions and filings as well. He was invited to participate in a telephonic discussion of all plaintiffs' counsel on September 21, 2012. In October 2012, his cases were

included in a joint notice of appeal filed to the Eleventh Circuit, and he consented to a joint Civil Appeals Statement and Certificate of Interested Parties filed with the Court of Appeals.

17. In the months preceding this, Mr. Wolf had indicated that he would not agree to a joint decision-making procedure regarding the coordinated cases. This sparked a discussion over whether he should be removed from the main plaintiffs' counsel email list, "due to his failure to agree to group decisions."

18. On October 6, 2012, pursuant to the consensus of the remainder of plaintiffs' counsel, Mr. Wolf was removed from the main plaintiffs' counsel email list and a new list was created that included Mr. Wolf and other plaintiffs' counsel. Mr. Wolf was notified of this group decision. From this point forward, Mr. Wolf was no longer included in most of the discussions among plaintiffs' counsel. In my opinion, this decision was made in an abundance of caution to protect the work product of the members of the list, at the earliest moment that we had an indication that Mr. Wolf's interests were not perfectly aligned with ours.

19. Although the issue of advancement and reimbursement of case-related expenses to witnesses had been discussed previously on the email list, and various legal memoranda and ethics opinions had been exchanged, that exchange was over a year before Mr. Wolf was excluded from the list, and did not precipitate his exclusion; Mr. Wolf continued to be included in discussions following the

exchange.

20. Even after Mr. Wolf was removed from the main plaintiffs' counsel email list, myself and other counsel attempted to continue to coordinate with him. Despite the fact that our interests may have diverged slightly, I continued to have no reason to suspect that the prior understandings regarding confidentiality and privilege no longer applied.

21. On April 21, 2013, I emailed Mr. Wolf suggesting that, as a matter of litigation strategy, it would be best for all counsel to present one brief to the Eleventh Circuit, despite the fact that Mr. Wolf was embroiled in a dispute with another plaintiffs' counsel firm, Boies Schiller & Flexner. Mr. Wolf responded that he would be writing his own brief, copying Chiquita's counsel John Hall on his email, which included my confidential assessment of litigation strategy.

22. This was the first indication I had that Mr. Wolf did not believe that communications among plaintiffs' counsel were confidential and privileged, and the first indication I had that, by sharing information with Mr. Wolf, I would increase the likelihood that such information would be discovered by third parties, including Chiquita. I believe that the sharing of my email with opposing counsel was an egregious ethical violation on Mr. Wolf's part, and that he should have known that communications among plaintiffs' counsel in the MDL were considered confidential and privileged.

23. Since this point, lacking assurances that Mr. Wolf would treat communications as confidential and privileged, I have determined that I am unable to communicate with him about any matters concerning litigation strategy in the *Chiquita* MDL.

24. Drummond's subpoenas to Mr. Scarola and his firm, Searcy Denney, include a number of requests whose scope might include confidential work product, generally attorney opinion work product, of myself, other attorneys at EarthRights International, my co-counsel, and other plaintiffs' lawyers in the *Chiquita* MDL.

25. Request #1, for example, seeks communications with Mr. Collingsworth and his firm, "relating to (a) the provision of security in Colombia or (b) payments to witnesses or any Colombian paramilitary."

26. To be clear, because Mr. Collingsworth has been a member of the Chiquita MDL email list from the beginning, Request #1 presumably covers all emails to that list.

27. Furthermore, the basic subject matter of the Chiquita litigation is the fact that Chiquita provided payments to Colombian paramilitaries and recorded these as payments for security services. Thus, the entire subject matter of the Chiquita MDL – including over two thousand emails to the Chiquita MDL email list – could fit under a literal reading of Request #1.

28. Simply reviewing these thousands of emails and producing a document-by-

document privilege log would be an enormously burdensome undertaking.

29.     Requests #2 and #3, which seek similar communications with Mike Hugo and anyone else at Parker Waichman LLP, are similarly expansive; both Mr. Hugo and others from Parker Waichman have been subscribed to the Chiquita MDL email list at various points in time.

30.     Request #6, seeking any documents relating to meetings with Mr. Collingsworth relating to the same two topics ("the provision of security in Colombia" and "payments to witnesses or any Colombian paramilitary"), is also incredibly broad. This would presumably encompass any records of any meetings of the Chiquita MDL plaintiffs' counsel in which Mr. Collingsworth participated, which would again include substantial attorney opinion work product.

31.     Requests #7 and #8, which seek "any response" to an email to the Chiquita MDL email list which was apparently improperly obtained by Drummond, may also encompass attorney opinion work product. Other attorneys, including attorneys from EarthRights International, responded to this email from Mr. Scarola, with their candid and confidential opinions.

32.     Request #9, which seeks all communications relating to the *Drummond* matters, likewise encompasses substantial *Chiquita* MDL work product.

33.     For example, once it became clear that Mr. Wolf had broken confidentiality and unethically provided confidential communications to Drummond's counsel,

the Chiquita plaintiffs' counsel discussed strategy for dealing with this issue.

34. Mr. Wolf also referenced the *Drummond* matters in a filing to the Eleventh Circuit in the *Chiquita* MDL, and thus strategic discussions among *Chiquita* MDL plaintiffs' counsel regarding a response to this filing also would have referenced the *Drummond* matters.

35. To the best of my knowledge, none of the Movant attorneys shared any facts regarding any payments or security services provided to any witness in the *Drummond* matters, in part because they have no direct knowledge of such facts. Some Movant attorneys did provide confidential opinions and legal research regarding the abstract issue of the permissible scope of advancement and reimbursement of case-related expenses to fact witnesses, among the many dozens of issues that have arisen in the *Chiquita* MDL.

36. I learned of Drummond's subpoenas to Mr. Scarola and his firm on October 31, 2014, the same day I executed my previous declaration. At the time, I provided a truthful declaration to Mr. Scarola to assist with his defense of the subpoena, but I did not read the subpoenas and had little knowledge of their scope.

37. It was not until December 15, 2014, that I learned the scope of the subpoenas (which would likely include substantial opinion work product of myself, my staff, and my co-counsel), and learned that production under the subpoenas was likely. At that point, EarthRights International and our co-counsel immediately

began preparing this motion.

38. On the morning of December 18, 2014, I spoke with H. Thomas "Trey" Wells III, counsel for Drummond, who apprised me that Drummond would oppose the Movants' efforts to invervene and quash the subpoenas at issue here.

39. On December 19, 2014, I received by email a letter from Mr. Wells stating his position that Movants' request to intervene was untimely, urging EarthRights International to "reconsider any collateral attack on Judge Middlebrooks' decision," and threatening to seek "costs and fees."

40. Mr. Wells also stated in his letter that "Drummond is willing to agree to an appropriate protective order to ensure that documents produced pursuant to the subpoena will not be shared with Chiquita or its counsel, or anyone else outside the *Drummond v. Collingsworth* litigation.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 22nd day of December, 2014, in Silver Spring, Maryland.

By: *[signature]*
MARCO SIMONS
**EarthRights International**
1612 K Street NW #401
Washington, DC 20006
Tel: 202-466-5188 x103
Fax: 202-466-5189
marco@earthrights.org